**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| AMBER PARKER et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>INDIANA HIGH SCHOOL ATHLETIC )<br>ASSOCIATION et al., )<br>)<br>Defendants. )<br>) | Cause No. 1:09-cv-885-WTL-JMS |

## ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is a Motion for Partial Summary Judgment (Docket No. 29) filed by the

School Defendants.[1] This motion is fully briefed, and the Court being duly advised, now

**GRANTS** the School Defendants' motion for the reasons set forth below.

## I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary

judgment, the admissible evidence presented by the non-moving party must be believed and all

---

[1] The School Defendants are: Franklin County Community School Corporation, South
Dearborn Community School Corporation, Decatur County Community Schools, Switzerland
County School Corporation, Fayette County School Corporation, Lawrenceburg School
Community Corporation, Greensburg Community Schools Corporation, Sunman-Dearborn
Community School Corporation, Richmond Community Schools Corporation, Batesville
Community School Corporation, Jennings County School Corporation, Rush County Schools
Corporation, Union County School Corporation d/b/a Union County College Corner Joint School
District, and Muncie Community Schools Corporation.

reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

Amber Parker is the mother of J.L.P., who previously played basketball for the Franklin County High School ("FCHS") girls' basketball team.[2] From 2007 to 2009, Parker also served as the head coach of the FCHS girls' basketball team. Tammy Hurley is the mother of C.H., who currently plays for the FCHS girls' basketball team.[3]

The Plaintiffs' suit alleges that the School Defendants and the Indiana High School Athletic Association ("IHSAA") violated Title IX of the Education Amendments of 1972 and the Fourteenth Amendment of the United States Constitution[4] by scheduling girls' basketball games on non-preferred dates and times. The gist of the Plaintiffs' claim is that the Defendants

---

[2] In July 2010, the Parker family relocated to Massachusetts. Accordingly, J.L.P. withdrew from FCHS and she no longer plays basketball for the school. Nonetheless, for the time being, Parker and J.L.P. remain plaintiffs in this suit.

[3] After the Parkers decided to move out of state, the Plaintiffs filed an unopposed motion to add Hurley and C.H. Docket No. 116. The Court granted the Plaintiffs' motion on July 27, 2010. Docket No. 117.

[4] The Plaintiffs' Fourteenth Amendment claim is brought pursuant to 42 U.S.C. § 1983.

assigned boys' basketball teams to play on preferred dates and times, typically Friday and

Saturday evenings, more frequently than the Defendants assigned girls' basketball teams to play

at these preferred times.

The Defendants filed motions to dismiss, which the Court granted in part and denied in

part.[5]  *See* Docket No. 56.  Upon reconsideration, the Court again granted in part and denied in

part the Defendants' motions to dismiss.[6]  *See* Docket No. 77.  What remains to be resolved are

the Title IX and § 1983 claims against the School Defendants and the § 1983 claim against the

IHSAA.  The School Defendants now assert that they are immune from the Plaintiffs' § 1983

claim pursuant to the Eleventh Amendment to the United States Constitution.

### III.  DISCUSSION

Before beginning its analysis the Court notes that in *Long v. Turner*, 1:08-cv-890-SEB-

TAB, Judge Barker addressed the same issue that this Court faces here.  Indeed, the parties to the

instant case have called the Court's attention to the briefs and the Entry from the *Long* case.  As

Judge Barker cautioned, district court cases do not have any precedential authority and thus,

although the Court does not rely on Judge Barker's decision, the Court believes that her analysis

---

[5] The Court dismissed any claims that Parker purported to bring as a class action, as well as any claims brought by Parker's younger daughter, H.K.P.  In reliance on *Doe v. Smith*, 470 F.3d 331 (7th Cir. 2006), the Court also dismissed the Fourteenth Amendment claim against the School Defendants.  Finally, the Court concluded that the IHSAA was not a recipient of federal funds and thus was not a proper Title IX defendant.  Accordingly, the Court dismissed the Title IX claims against the IHSAA.

[6] Based on new Supreme Court case law, *Fitzgerald v. Barnstable School Committee*, 129 S. Ct. 788 (2009), which recognized parallel rights of action under Title IX and § 1983, the Court reinstated the Plaintiffs' Fourteenth Amendment Claim against the School Defendants. However, the Court reiterated its conclusion that the Title IX claim against the IHSAA, as well as any class action claims and any claims brought by H.K.P. were properly dismissed.

and her conclusion are persuasive.  Thus, the Court shall use the same approach as Judge Barker and ultimately the Court reaches the same conclusion.  With that in mind, the Court turns now to the Eleventh Amendment analysis.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend XI.  "The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances but does not extend to counties and similar municipal corporations."  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  Although there are exceptions to this blanket rule, the Plaintiffs have not alleged that any of them apply.  Accordingly, if the School Defendants are arms of the state for Eleventh Amendment purposes, then they are immune from the Plaintiffs' § 1983 suit.  The arm of the state analysis is governed by a two-part inquiry.  First, and most important, "is the extent of the entity's financial autonomy from the state."  *Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987).  Second, the Court must consider the entity's general legal status.  *Id*. at 847.

**A.      The School Defendants' financial autonomy.**

In assessing financial autonomy courts consider: "(1) the extent of state funding; (2) the state's oversight and control of the entity's fiscal affairs; (3) the entity's ability to raise funds; (4) whether the entity is subject to state taxation; and (5) whether a judgment against the entity would result in an increase in its appropriations."  *Peirick v. IUPUI Athletics Dept.*, 510 F.3d 681, 696 (7th Cir. 2007); *see Kashani*, 813 F.2d at 845.

### 1. Extent of state funding.

The Indiana Code sets out a non-exhaustive list of fourteen operating funds from which schools can draw funds. They are the: (1) General Fund; (2) Referendum Tax Levy Fund; (3) Special Education Preschool Fund; (4) Racial Balance Fund; (5) School Transportation Fund; (6) School Bus Replacement Fund; (7) Capital Projects Fund; (8) Debt Service Fund; (9) Levy Excess Fund; (10) Repair and Replacement Fund; (11) Self-Insurance Fund; (12) Petty Cash Fund; (13) Special Purpose Funds without Local Tax; and (14) School Technology Fund. *See* IND. CODE 20-40-2 to -15. Although the Indiana Code establishes all fourteen funds, only some are required, some are necessary only in certain situations, and some may be created at a school corporation's discretion. One of the required funds is the General Fund, which is the primary source of monies for a school corporation. Teacher salaries and benefits, supplies, and utility costs are paid from the General Fund. General Fund monies may also be used to pay expenses that would normally come from other funds so long as this activity is not prohibited by state law. The General Fund is also used to finance other funds.

Until recently, Indiana public school corporations' General Funds were financed primarily through local property tax levies, which were left largely to the discretion of the school corporation. There was only minimal state supplementation. Following the 2008 enactment of Public Law 148, the school financing regime has shifted. Now, schools' General Funds are primarily funded by the state – from distributions from the statewide sales tax. In addition, school corporations' abilities to levy property taxes to raise funds have been severely limited. However, this is not to say that school corporations cannot use property tax levies to fill other school funds. For example, a school corporation can impose a School Bus Replacement Levy to

raise money for its School Bus Replacement Fund.[7]  *See* IND. CODE 20-46-5-1 to -12.

The School Defendants argue that the enactment of Public Law 148 has effectively given the state total control over the their General Funds.  *See* Docket No. 30 at 9-10.  The School Defendants analogize *Kashani* and posit that because a judgment in this case "would be paid directly out of funds allocated from the state treasury to the respective schools," they should benefit from Indiana's Eleventh Amendment immunity.  *Id*. at 10.  In response, the Plaintiffs allege that the School Defendants do not receive all of their funding from the state because the School Defendants have admitted the "receipt of federal funding."  Docket No. 58 at 9.  Further, the Plaintiffs note that the School Defendants have not explained which funds, or what proportion of each fund, is state-supported.  *See id.* at 10.  It is true that the School Defendants do retain some ability to levy property taxes for specific purposes.  However, neither party cites any evidence quantifying what percentage of the School Defendants' operating revenues is provided by the state.  In addition, neither party effectively compares the instant situation to *Kashani*, where thirty-six percent of the university's income was provided by the state.  813 F.2d at 845.  However, because the General Fund is the primary source of income for the School Defendants, and because it is common knowledge that the state now provides the bulk of the School Defendants' General Funds, the Court concludes that this factor weighs in the School Defendants' favor.

### 2.    State oversight and control of fiscal affairs.

With respect to the second factor, the School Defendants argue: "To the extent that the

---

[7] Similarly, Racial Balance Levies, School Transportation Levies, Capital Projects Levies, and Debt Service Levies are all permitted by the Indiana Code.  *See* IND. CODE 20-46-3-1 to -9; IND. CODE 20-46-4-1 to -10; IND. CODE 20-46-6-1 to -20; IND. CODE 20-46-7-1 to -14.

School Defendants have locally raised funds (Capital Projects and Debt Service), in recent years

with the Governor's leadership, the State has taken on almost complete oversight and control

over such funds through the Department of Local Government Finance ("DLGF")." Docket No.

30 at 12. The School Defendants rely on the DLGF website and mission statement, which state

that the DLGF is "responsible for ensuring property tax assessment and local government

budgeting are carried out in accordance with Indiana law." *Id*. In addition, the DLGF "is

charged with publishing property tax assessment rules and annually reviewing and approving the

tax rates and levies of every political subdivision in the state, including all counties, cities,

townships, school corporations, libraries, and other entities with tax levy authority." *Id*. The

School Defendants do not explain whether the DLGF's review and approval is substantive.

However, as the School Defendants note, the DLGF website states:

> The Department is committed to working with schools and other government
> agencies to review school construction funding to ensure fiscal responsibility on
> behalf of Indiana taxpayers . . . . [T]he Department reviews school construction
> proposals and makes a decision to approve, disapprove, or modify the project.
> The review of the project goes beyond the bricks and proposed classrooms.

*Id*.

In response, the Plaintiffs argue that "[t]he State has very little control over the School

Defendants." Docket No. 58 at 7. The Plaintiffs claim that the "Board of Education is bereft of

any power to approve or disapprove plans and specifications regarding the construction,

alteration, or repair of school buildings" and "[t]he state has now power . . . that is

commensurate with that of the School Defendants regarding the operations of school

corporations." *Id*. In essence the Plaintiffs assert that "the School Defendants, as school

corporations, possess a great degree of power, independence and autonomy from the state, and

this factor militates against a conclusion that they are arms of the state." *Id*. at 8. Unfortunately, the Plaintiffs' argument ignores the fact that the focus of the inquiry is the School Defendants' *financial* affairs, not their affairs in general.

In sum, the Court concludes that neither side has adequately described the DLGF's oversight of the School Defendants. At most, the School Defendants have shown that the DLGF has oversight with respect to school construction projects; however, this does not automatically mean that the DLGF controls all of the School Defendants' financial affairs. The School Defendants have the burden of showing that they are financially dependent on the state and they have not met this burden. Accordingly, this factor cuts in the Plaintiffs' favor.

### 3. Ability to raise funds.

The School Defendants claim that their ability to independently raise funds was effectively eliminated by *Nagy v. Evansville-Vanderburgh School Corp.*, 844 N.E.2d 481 (Ind. 2006). According to the School Defendants, *Nagy* "held that schools could not impose additional fees outside of the State dollars." Docket No. 30 at 13. "While schools retain some limited ability to raise funds, this only occurs in two areas, construction and transportation, and these two areas are highly regulated." *Id*.

*Nagy*'s holding, however, is substantially narrower than the School Defendants claim. In *Nagy*, the Evansville-Vanderburgh School Corporation imposed a $20 activity fee on all students. The Indiana Supreme Court reviewed Article 8, Section 1 of the Indiana Constitution, which provides:

> Knowledge and learning, generally diffused throughout a community, being
> essential to the preservation of a free government; it shall be the duty of the
> General Assembly to encourage, by all suitable means, moral, intellectual,
> scientific, and agricultural improvement; and to provide, by law, for a general and

uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all.

IND. CONST. art VIII, § 1. The court discussed the historical development of common schools in Indiana and the meaning of "tuition" and concluded that the $20 fee, which was deposited into the school's general fund and was used to "offset the costs of such things as: a coordinator of student services, nurses, media specialists, alternative education, elementary school counselors, a drama program, a music program, speech and debate programs, academic academies, athletic programs, and a police liaison program," was a violation of the Indiana Constitution. *Nagy*, 844 N.E.2d at 492. The court explained that "either the legislature or the State Board [of Education] has already determined that all such items are part and parcel of a public school education and by extension qualify for public funding." *Id*. Therefore, "the very programs, services, and activities for which [the school] charges a fee already are a part of a publicly-funded education in the state of Indiana." *Id*. at 493. Although the school could charge a fee for services, activities, or programs that were outside of those required by the legislature or the State Board of Education, the school could not charge students for things that were mandatory parts of a public education. *Id*. *Nagy* did not discuss the school's ability to raise funds through tax levies, bonds, or other charges. And indeed, Indiana school corporations can still use tax levies to raise money to be deposited into certain funds. However, as discussed below with respect to the fifth factor, this factor weighs in the School Defendants' favor.

### 4. State taxation.

The Defendants do not offer any argument about the fourth factor and the Plaintiffs concede that "school corporations are exempt from taxation." Docket No. 58 at 12. However, as the Plaintiffs rightly note, this factor is neutral because "Indiana has exempted political

subdivisions from taxation," *id*., and political subdivisions (as well as counties and cities) are undisputedly not arms of the state.

### 5.     Increased appropriations following a judgment.

Thus, we come to the fifth and final factor of the financial autonomy analysis.  The School Defendants argue that this factor cuts in their favor because "[a] judgment against the School Defendants would be paid from their General Funds and thus would be paid out of state tuition support money which would then need to be replaced by the State to maintain the level of instruction for the school."  Docket No. 30 at 13.  Although the School Defendants assert that a judgment would have to be paid from their respective General Funds, they fail to explain why this is true.[8]  In response, the Plaintiffs cite IND. CODE 20-48-1-1(b) and argue that the "School Defendants are . . . allowed to issue a bond to pay the cost of a judgment that may be entered against them."  Docket No. 58 at 9.  However, this argument is flawed because it assumes either that the School Defendants already have enacted such a levy or that voters would automatically approve a tax levy to pay a judgment against the School Defendants.

Further, the Plaintiffs do not dispute the fact that if a judgment in this case must be paid from the School Defendants' General Funds, then the result would be an increase in state appropriations to make up the shortfall.  This would be, in effect, a judgment against the state treasury.  The state calculates General Fund revenue for each school based on what is known as the Foundation Program which is, in effect, a pre-determined formula designed to supply the School Defendants with the operational revenue that the state considers necessary.  *See* Docket

---

[8] Specifically, the School Defendants fail to explain why a judgment could not be paid from their Debt Service or Self-Insurance Funds.

No. 30 at 9-10.  The Foundation Program does not account for judgments against the School

Defendants; therefore, the state would have to make up any losses in the School Defendants'

General Funds by providing additional funding so that the School Defendants could meet the

state's educational mandates.  Therefore, this factor weighs against the School Defendants'

financial autonomy from the state.

What this analysis reveals is that Indiana supplies the majority of the School Defendants'

operational budgets, the School Defendants are not able to raise additional revenue independent

of the state, and if a judgment were entered against the School Defendants the state would be

required to increase its appropriations to the School Defendants.  Therefore, the School

Defendants are not financially autonomous because the state exercises substantial oversight and

control over their finances.  Accordingly, this portion of the analysis weighs in favor of finding

that the School Defendants are arms of the state and thus enjoy Eleventh Amendment immunity.

**B.     The School Defendants' general legal status.**

The School Defendants concede that this portion of the arm of the state analysis is of

lesser importance.  Docket No. 30 at 13.  Nonetheless, they claim that this factor cuts in their

favor because the Indiana Supreme Court's decisions in *Nagy* and in *Bonner v. Daniels*, 907

N.E.2d 516 (Ind. 2009),

> recognized the exclusive and almost unbridled discretion the State of Indiana
> through the General Assembly has over local schools and the fact that these local
> schools are now under the almost exclusive direction and control of the State of
> Indiana through comprehensive legislation by the General Assembly,
> comprehensive rulemaking by the Indiana State Board of Education and the State
> Board of Accounts, and day to day regulation by the Indiana Department of
> Education and State Superintendent of Public Instruction.

Docket No. 30 at 13-14.

11

The Court does not read either *Nagy* or *Bonner* as broadly as do the School Defendants. Further, the Court agrees with the Plaintiffs that portions of the Indiana Code define school corporations as non-state entities. In addition, there is nothing in the record indicating that members of the School Defendants' governing boards are appointed by state officials. *See* Docket No. 58 at 6-7, 13. In fact, the converse is true – the School Defendants independently elect their decisionmakers. This tends to show that the School Defendants are not arms of the state. Accordingly, the Court concludes that the School Defendants' general legal status is not as an arm or agency of the state.

Nevertheless, the School Defendants' financial dependence on the state of Indiana far outweighs their generally independent legal status. Therefore, the Court concludes that the Eleventh Amendment immunity enjoyed by the state of Indiana extends to the School Defendants in this case.

**CONCLUSION**

For the foregoing reasons, the School Defendants' Motion for Partial Summary Judgment (Docket No. 29) is **GRANTED**.

SO ORDERED: 09/27/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

12

Robert M. Baker III
rbaker@rbakerlaw.net

William R. Groth
Fillenwarth Dennerline Groth & Towe LLP
wgroth@fdgtlaborlaw.com

Mark W. Sniderman
Caplin Sniderman P.C.
mark@caplinlaw.com

Thomas E. Wheeler II
Frost Brown Todd LLC
twheeler@fbtlaw.com